IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CMH MANUFACTURING, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-21-0674 |
| SERVAIS EVRARD NEIL, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff CMH Manufacturing, Inc. ("Clayton") filed suit against Defendants Servais Evrard Neil, BPN Partners, LLC ("BPN"), and Layne Hockaday, alleging that it was defrauded by Neil and BPN, and that Hockaday was unjustly enriched as a result. Against Neil and BPN (collectively, the "Contractors"), Clayton pleads claims for breaches of contract, fraudulent misrepresentation, and violations of the Tennessee Consumer Protection Act ("TCPA"), TENN. CODE ANN. § 47-18-101, *et seq.* Clayton also brings claims against Neil and Hockaday for unjust enrichment and violations of the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), MD. CODE ANN., COM. LAW § 15-202, *et seq.* (*See* Compl., ECF No. 1.) On April 20, 2021, the Clerk entered an Order of Default as to all three Defendants under Federal Rule of Civil Procedure 55(a) for failure to respond to Clayton's Complaint. (ECF No. 18.) Clayton has moved for entry and certification of judgment for the breach of Settlement Agreement and Promissory Note claim (Count III) pursuant to Rule 54(b) (ECF No. 7), and entry of default judgment on the remaining claims under Rule 55(b)(2) (ECF No. 22). Both motions are ripe, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Clayton's Motion for Entry and

1

Certification of Judgment under Rule 54(b) will be granted, and Clayton's Motion for Default Judgment will be granted in part and denied in part.

## I. *Background*[1]

Neil is the managing member of BPN, a limited liability company that performs general contracting services. (Compl. ¶¶ 2–3.) Under an Independent Contractor Application and Agreement (the "Contractor Agreement") and a Subcontract Agreement, BPN and Neil agreed "to install homes manufactured by Clayton on the premises of a third-party purchaser." (*Id.* ¶¶ 8–10.) The Subcontract Agreement provided a payment structure under which Clayton agreed to pay the Contractors for all relevant work and necessary labor, materials, and equipment costs pursuant to weekly Applications for Payment, which were based on a sample form attached to the Contractor Agreement. (*Id.* ¶¶ 11, 14.) The Application for Payment form required the Contractors to certify that, "to the best of [BPN's] knowledge, information and belief," BPN had completed the relevant work consistent with the terms of the parties' contract, that BPN had reimbursed vendors from Clayton's previous payments, and that the "current payment shown herein is now due." (*Id.* ¶ 17 (quoting Compl. Ex. A, ECF No. 1-1).) From January 14, 2020 through July 31, 2020, the Contractors submitted sixteen Applications for Payment (the "Fraudulent Applications"), in which they knowingly requested payment for Services that the Contractors did not perform and reimbursements for payments that the Contractors did not pay to vendors. (*Id.* ¶¶ 19, 20.) As a result of the Fraudulent Applications, Clayton overpaid the Contractors by $1,123,077.07 (the "Overpayment"). (*Id.* ¶ 23.)

---

[1] This section is based on the facts set forth in the Complaint, all of which Defendants are deemed to have admitted upon the Clerk's entry of default against them. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

2

On July 17, 2020, Neil and his wife, Hockaday, purchased real property in Baltimore (the "Baltimore Property") for $850,000, using funds obtained from the Overpayment. (*Id.* ¶¶ 25, 27.) Neil and Hockaday obtained title to the Baltimore Property in fee simple as tenants by the entirety, and Hockaday provided no consideration in exchange for her interest in the Baltimore Property. (*Id.* ¶¶ 26, 28; *see also* Compl. Ex. C at 2, ECF No. 1-3.)

When Clayton discovered that it had overpaid the Contractors by more than $1 million, Clayton demanded that the Contractors immediately repay the Overpayment. (*Id.* ¶ 29.) Unable to meet Clayton's demand for immediate repayment because he had "already spent his ill-gotten gains," Neil instead requested that Clayton enter into a Settlement and Forbearance Agreement (the "Settlement Agreement") with the Contractors. (*Id.* ¶ 30; *see* Compl. Ex. D, ECF No. 1-4.) In conjunction with the Settlement Agreement, the Contractors jointly and severally executed a Promissory Note, which provided a schedule by which the Contractors agreed to repay the Overpayment, and entered a Stipulation to Facts and Consent to Entry of Judgment (the "Stipulation and Consent").[2] (*Id.* ¶¶ 33–34; *see also* Compl. Exs. E–F, ECF Nos. 1-5, 1-6.) The Contractors consented to the immediate entry of judgment against them, jointly and severally, in the amount of the then-outstanding Promissory Note, if Clayton brought suit pursuant to the Stipulation and Consent or if the Contractors defaulted on their obligations under the Promissory Note. (*See* Compl. Ex. F at 2.)

On March 17, 2021, Clayton brought suit for breach of the Contractor Agreement, Subcontract Agreement, Settlement Agreement, and Promissory Note, along with other state common law and statutory claims. (*See* Compl.) The Contractors have failed to make any payments under the Promissory Note and are currently in default under the Settlement Agreement.

---

[2] The facts that the Contractors admitted in the Stipulation and Consent are materially identical to those alleged in Clayton's Complaint in the instant matter. (Compl. ¶ 35.)

3

(*Id.* ¶¶ 37–38.) The unpaid balance due and payable under the Promissory Note is $1,166,927.72 (the "Debt"), a sum that includes interest but excludes attorneys' fees and other expenses associated with enforcement. (*Id.* ¶ 39.)

After filing its Complaint, Clayton moved for Entry and Certification of Judgment Under Rule 54(b) for the Contractors' breach of the Settlement Agreement and Promissory Note. (Mot. Part. Judgment, ECF No. 7.) After Defendants failed to respond to Clayton's Complaint, the Clerk entered an Order of Default under Federal Rule of Civil Procedure 55(a) against all three Defendants on April 20, 2021. (*See* ECF No. 18.)

## II. *Legal Standard*

After a Court's entry of default against a party under Rule 55(a), the opposing party may move for default judgment. Fed. R. Civ. P. 55(b)(2); *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992). Entry of default against a defendant does not entitle a plaintiff to judgment in its favor as of right. A defendant in default is deemed to admit the plaintiff's well-pleaded factual allegations, but not the plaintiff's conclusions of law or allegations as to the amount of damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also Ancona v. Paragon Int'l Wealth Mgmt., Inc.*, Civ. No. JKB-18-1338, 2019 WL 2289626, at *1 (D. Md. May 28, 2019); 10A MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2685 (4th ed. 2016). "In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover.'" *Ryan*, 253 F.3d at 780. Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), that policy is not without exceptions. Indeed, "[d]efault judgment 'is appropriate when the adversary process has been halted because of an

4

essentially unresponsive party.'" *Grim v. Balt. Police Dep't*, Civ. No. ELH-18-3864, 2019 WL 5865561, at *28 (D. Md. Nov. 8, 2019) (quoting *Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013).

Courts have discretion to decline to enter default judgment based on the circumstances and the interests of justice. *See, e.g., Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. R.E. Petersen Inc.*, Civ. No. HAR-93-2494, 1994 WL 149633, at *1 (D. Md. Feb. 16, 1994) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)) (discussing the "extensive line of cases" preferring merits-based resolutions); 10A MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2685 (4th ed. 2016) (collecting cases). Indeed, "[u]nder modern procedure, defaults are not favored by the law and any doubts usually will be resolved in favor of the defaulting party." *Id.* § 2681.

Thus, even when a court has entered defaults against defendants, the fact of default does not automatically entitle a plaintiff to have default *judgments* entered. It is the court's task, therefore, to "determine whether the well-pleaded allegations in [plaintiff's] complaint support the relief sought." *Ryan*, 253 F.3d at 780; *see also Nishimatsu*, 515 F.2d at 1206 (explaining that "[t]here must be a sufficient basis in the pleadings for the judgment entered"). Although the Court may hold a hearing to ascertain the amount of damages, it is not required to do so if the record establishes the validity of the amount of damages requested. *See* Fed. R. Civ. P. 55(b)(2) (explaining that if a sum is not certain or ascertainable through computation, a court may hold a hearing to "conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter"); *see also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010); *Grim*, 2019 WL 5865561, at *29.

## III. Analysis

As a preliminary matter, the Court briefly considers Clayton's motion for partial judgment under Rule 54(b) and finds that Clayton's ripe default judgment motion on all of its remaining claims obviates the need for a separate analysis under Rule 54(b). The Court then considers whether the well-pleaded allegations in Clayton's Complaint support the relief sought in each of its claims, and finds that Clayton establishes its entitlement only to compensatory damages in the amount of the Debt.

### A. Clayton's Motion Under Rule 54(b)

In its Motion for Entry and Certification of Judgment Under Rule 54(b), Clayton argues that there is no just reason to delay certification of judgment against the Contractors on its claim for breach of the Settlement Agreement and Promissory Note. (Mot. Entry Judgment at 10–11.) Clayton seeks entry of a judgment finding the Contractors jointly and severally liable for compensatory damages in the amount of the Debt; certification of a final judgment against the Contractors for this claim; and such further relief as the Court deems proper. (*Id.*)

Federal Rule of Civil Procedure 54(b) provides a court with discretion to enter a final judgment against fewer than all defendants if it determines that such relief is appropriate and expressly determines that there is no just reason for delay. Because Clayton's motion for default judgment, which seeks entry of judgment on all of Clayton's remaining claims, is now ripe, the Court need not determine whether there is "no just reason to delay" the certification of judgment on Clayton's breach of Settlement Agreement claim alone. *See* Fed. R. Civ. P. 54(b). Accordingly, the Court combines its consideration of Clayton's claim for compensatory damages in its Rule 54(b) motion with Clayton's claim for compensatory damages in its motion for default judgment. *See infra* Part III.B.

6

## B. *Compensatory Damages in the Amount of the Debt Against the Contractors*

As a remedy for the Contractors' breach of the Contractor Agreement, Subcontract Agreement, Settlement Agreement, and Promissory Note, Clayton seeks an entry of judgment against the Contractors jointly and severally for compensatory damages of $1,166,927.72, the amount of the Debt. (Mot. Part. Judgment at 1–2; Mot. Default Judgment at 2.) Through their default, the Contractors have effectively conceded that they knowingly submitted Fraudulent Applications, falsely certifying that they had performed work and reimbursed third-party vendors, in violation of the Contractor and Subcontract Agreements. (Compl. ¶¶ 19–22.) *See Ryan*, 253 F.3d at 780 (explaining that a defendant in default "admits the plaintiff's well-pleaded allegations of fact"). The Contractors have further conceded that they entered into the Settlement Agreement and Promissory Note, which set forth the terms by which the Contractors must repay Clayton for the Overpayment, but that they have failed to make any payments under the Promissory Note to date. (*Id.* ¶¶ 34, 38.) Accordingly, Clayton has established that the Contractors breached their obligations under the Contractor Agreement, Subcontract Agreement, Settlement Agreement, and Promissory Note.[3]

Likewise, the Court finds that Clayton has proven the amount of the compensatory damages that the Contractors owe for the Contractors' breaches of contract through the affidavit of Clayton Vice President of Operations Ron Powell. (*See* Ron Powell Aff. ¶¶ 42–43, ECF No. 22-2 (delineating the repayment schedule established in the Promissory Note and explaining that, at a default interest rate of 11% since December 15, 2020, these missed payments total

---

[3] In the Complaint, Clayton also brings a claim against the Contractors for fraudulent misrepresentation, for which it seeks compensatory and punitive damages. (*See* Compl. ¶¶ 54–63.) Because Clayton has already established its entitlement to compensatory damages under Counts I through III, and Clayton does not request any additional punitive damages as a result of fraudulent misrepresentation in its motion for default judgment, the Court need not consider the merits of Clayton's fraudulent misrepresentation claim.

$1,166,927.72).) Accordingly, the Court will grant Clayton's requests in its motion for entry of partial judgment under Rule 54(b) and motion for default judgment to enter judgment against the Contractors jointly and severally for compensatory damages in the amount of the Debt.

### *C. Punitive or Treble Damages Under the TCPA Against the Contractors*

Clayton also seeks treble damages in the amount of $3,369,231.21 pursuant to sections 47-18-109(a)(3) and 47-18-109(a)(4) of the TCPA. (Mot. Default Judgment at 2.) Clayton claims that the Contractors violated TCPA sections 47-18-104(5), 47-18-104(7), and 47-18-104(12), which trigger the application of the TCPA's treble damages remedy, and that Clayton is authorized to bring this action under § 47-18-109(a)(1). (Compl. ¶¶ 66–70.)

The TCPA was designed "[t]o protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within [Tennessee]." TCPA § 47-18-102(2); *see also Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (explaining that the TCPA must be "construe[d] liberally to protect consumers in Tennessee and elsewhere"). The TCPA defines "trade" or "commerce" as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, . . . or things of value wherever situated." *Id.* § 47-18-103(9). In *Steed Realty v. Oveisi*, for example, the Tennessee Court of Appeals found that, although the defendant was a citizen of Mississippi and the real property at the center of the parties' dispute was located in Mississippi, the defendant's conduct was nonetheless covered by the TCPA because "he has conducted trade and commerce in part in Tennessee by advertising and closing his real estate deals in this state," and the defendant "has an office in Tennessee from which he conducts his business." 823 S.W.2d 195, 198 (Tenn. Ct. App. 1991).

Section 47-18-109(a)(1) of the TCPA provides a cause of action for "[a]ny person who suffers an ascertainable loss of money or property . . . or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice." Under § 47-18-109(a)(3), if a defendant's violation was willful or knowing, the court may award treble damages. *Holladay v. Speed*, 208 S.W.3d 408, 418 (Tenn. Ct. App. 2005) (internal citation omitted) (committing the issue of treble damages to "the sound discretion of the trial court"). To determine whether to award treble damages, courts may consider: "(A) [t]he competence of the consumer or other person; (B) [t]he nature of the deception or coercion practiced upon the consumer or other person; (C) [t]he damage to the consumer or other person; and (D) [t]he good faith of the person found to have violated this part." *Id.* § 47-18-109(a)(4).

Here, unlike in *Oveisi*, Clayton does not adequately plead that the Contractors engaged in trade or commerce in Tennessee within the meaning of the TCPA. Indeed, Clayton avers that "a substantial part of the events or omissions giving rise to the claims at issue occurred" in the District of Maryland, and the primary connection between the Contractors and the state of Tennessee appears to be the fact that the Contractors "submitted the Fraudulent Applications to Clayton in the State of Tennessee." (Compl. ¶¶ 7, 69.) Further, even if Clayton had established that the TCPA governed the Contractors' conduct, the decision to assess treble damages is committed to the sound discretion of this Court. *See Holladay*, 208 S.W.3d at 418. The Court declines to exercise such discretion where the Contractors' connection to Tennessee is tenuous at best, and Clayton—although undoubtedly injured by the Contractors' Fraudulent Applications—was a competent, sophisticated counterparty to the transaction. *See* TCPA § 47-18-109(a)(4). Accordingly, Clayton's claim for treble damages under the TCPA fails.

## D. *Compensatory Damages for Unjust Enrichment Against Hockaday*

Clayton also seeks "compensatory damages" of $425,000 from Hockaday "for her unjust enrichment based on the value of her interest in the Baltimore Property purchased with funds fraudulently procured from Clayton." (Mot. Default Judgment at 2.) Clayton alleges—and Neil and Hockaday have conceded—that "[o]n information and belief, Neil used funds obtained from Clayton's Overpayment to purchase the Baltimore Property" for $850,000 and that Hockaday became a 50% owner of the Baltimore Property. (Compl. ¶¶ 25, 27, 82.) Hockaday has further conceded that she "provided no consideration in exchange for her interest in the Baltimore Property." (*Id.* ¶ 28.)

Unjust enrichment is an equitable claim available to a plaintiff when "the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." *Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966) (citation omitted). Specifically, a claim for unjust enrichment is established when "(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 887 A.2d 525, 546 (Md. 2005). In unjust enrichment actions, "the burden is on the plaintiff to establish that the defendant holds plaintiff's money and that it would be unconscionable for him to retain it." *Plitt*, 219 A.2d at 241.

Here, Clayton does not bear its burden of establishing both that Hockaday holds Clayton's money and that it would be unconscionable for her to retain the $425,000 representing her interest in half of the Baltimore Property. Clayton has failed to substantiate its allegations, made on "information and belief" (*see* Compl. ¶¶ 25, 27, 82), that the fraudulently procured funds were

10

used to purchase the Baltimore Property. The inability to crystallize the connection between the funds from the Overpayment to Neil and BPN and the funds used to purchase the Baltimore Property leaves the Court unable to determine that it would be unconscionable for Hockaday to retain her interest in the Baltimore Property. Accordingly, absent a clear showing that the funds from Clayton's Overpayment were used to purchase the Baltimore Property, Clayton's claim for unjust enrichment against Hockaday is denied.

### *E. Levy on Hockaday's Interest in the Baltimore Property Under the MUFCA*

Clayton requests entry of a judgment "permitting Clayton to levy on Ms. Hockaday's interest in the Baltimore Property as if the conveyance had not been made," pursuant to MUFCA § 15-209. (Mot. Default Judgment at 2.) Section 15-209 of the MUFCA provides that "[i]f a conveyance or obligation is fraudulent as to a creditor whose claim has matured, the creditor, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or immediately from such a purchaser, may . . . levy on or garnish the property conveyed as if the conveyance were not made." *Id.* § 15-209(a)(2).

Clayton fails to establish that it is entitled to levy on Hockaday's interest under the MUFCA because it does not demonstrate that Neil made a fraudulent conveyance that would trigger the application of MUFCA § 15-209(a)(2). Clayton pleads that "Neil indirectly conveyed ½ of the interest in the Baltimore Property to Ms. Hockaday" and that Hockaday did not provide consideration for her interest in the Baltimore Property. (Compl. ¶¶ 88, 89.) The deed to the Baltimore Property (the "Deed"), however, does not establish that Neil conveyed interest in the Baltimore Property to Hockaday. (*See* Powell Aff. Ex. C at 70, ECF No. 22-2.) To the contrary, the Deed indicates that Neil and Hockaday simultaneously obtained fee simple title to the Baltimore Property for $850,000 as tenants by the entirety. (*Id.*)

11

Even if Neil had made a fraudulent conveyance of his interest in the Baltimore Property to Hockaday as a tenant by the entirety, the Maryland Court of Special Appeals has found that "a creditor of either a husband or wife cannot attach the debtor's interest in entireties property. Therefore, a conveyance of that property, which was already beyond the creditor's reach, would not be fraudulent as to the creditor and would not be set aside in an action under the Maryland Uniform Fraudulent Conveyance Act." *Spitz v. Williams*, 519 A.2d 775, 776 (Md. Ct. Spec. App. 1987). Accordingly, because Clayton fails to establish that Neil fraudulently conveyed the Baltimore Property to Hockaday, the Court denies Clayton's request to enter judgment permitting Clayton to levy on Hockaday's interest in the Baltimore Property.

### *F. Constructive Trust Over the Baltimore Property*

Lastly, Clayton seeks the imposition of a constructive trust over the Baltimore Property up to the amount of the Overpayment. (Mot. Default Judgment at 2.) In *Wimmer v. Wimmer*, the Maryland Court of Appeals explained that a constructive trust is an equitable remedy, which "is applied by operation of law where property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it. . . . The purpose of the remedy is to prevent the unjust enrichment of the holder of the property." 414 A.2d 1254, 1258 (Md. 1980). "In the ordinary case, there must be clear and convincing evidence not only of wrongdoing, but also of the circumstances which render it inequitable for the holder of legal title to retain the beneficial interest." *Id.* (citing *Peninsula Methodist Homes & Hosps., Inc. v. Cropper*, 261 A.2d 787 (Md. 1970)). Indeed, "in most cases, unless there is an acquisition of property in which another has some good equitable claim, no constructive trust may be imposed. A rule without such limitations would permit the courts to effectively transfer property as a means of attempting to right every wrong." *Id.* at 1259.

12

Here, Clayton does not allege that Neil and Hockaday acquired the Baltimore Property by fraud, misrepresentation, or other improper means, so the Court considers whether Clayton demonstrates that it would be inequitable for Neil and Hockaday to retain title to the Baltimore Property under the circumstances presented by this case. As noted above, *see supra* Part III.D, Clayton's allegations that Neil used funds from the Overpayment to purchase the Baltimore Property and that Hockaday provided no consideration in exchange for her interest in the Baltimore Property are both based solely on Clayton's "information and belief." (*See* Compl. ¶¶ 27–28.) Although Neil and Hockaday are deemed to have admitted the factual allegations in Clayton's Complaint through their default, Clayton does not meet its evidentiary burden of establishing that it would be inequitable for Neil and Hockaday to retain title to the Baltimore Property. Indeed, accepting such pleading alone to support the imposition of a constructive trust would amount to "effectively transfer[ring] property as a means of attempting to right every wrong," which the Maryland Court of Appeals proscribed in *Wimmer*. 414 A.2d at 1259. Accordingly, Clayton's Motion for Default Judgment will also be denied with respect to its request for the imposition of a constructive trust over the Baltimore Property.

*IV. Conclusion*

For the foregoing reasons, an Order and Judgment shall enter granting Clayton's Motion for Entry and Certification of Partial Judgment Under Rule 54(b) (ECF No. 7) and granting in part and denying in part Clayton's Motion for Default Judgment Under Rule 55(b) (ECF No. 22).

DATED this 30 day of June, 2021.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge