# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CMH MANUFACTURING,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-21-0674** |
| **SERVAIS EVRARD NEIL,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Currently pending before the Court is Plaintiff's Motion to Alter or Amend (ECF No. 31) the Default Judgment entered by this Court on July 1, 2021 (ECF No. 24). Defendants oppose this Motion and seek to preserve the Default Judgment in its present form. (ECF No. 32.) Also pending is Plaintiff's Motion for Attorney's Fees (ECF No. 27). On reconsideration, the Court concludes that it will alter its previously-entered judgment to permit Plaintiff to seek punitive damages for its claim of fraudulent misrepresentation. In order to effectuate this amendment, the Court will implement a schedule for limited discovery and additional briefing regarding the appropriate sum of punitive damages. Because this case is set for further proceedings, awarding attorney's fees at this juncture would be premature. Accordingly, the Court will grant in part Plaintiff's Motion to Alter or Amend the Court's Default Judgment (ECF No. 31), and deny without prejudice Plaintiff's Motion for Attorney's Fees (ECF No. 27).

I.   ***Factual and Procedural Background***

The factual background of this case is more fully set out in this Court's prior Memorandum granting default judgment. (*See* ECF No. 23 at 2–4.) As explained there, the gravamen of

1

Plaintiff's Complaint is that it overpaid Defendants Servais Evrard Neil and BPN Partners, LLC ("BPN" and collectively with Neil, the "Contractors") by $1,123,077.07 (the "Overpayment"), based on misrepresentations made by the Contractors regarding work performed under a Subcontract Agreement. (*Id.* at 2.) Plaintiff also alleged, though only on information and belief, that much of the Overpayment had been used by Neil to purchase a home in Baltimore (the "Baltimore Property"), which Neil and his wife, Defendant Layne Hockaday own in fee simple as tenants by the entirety. (*Id.* at 3.) Plaintiff further alleged that, because much of the Overpayment was spent purchasing the Baltimore Property, Neil was unable to immediately refund the Overpayment when Plaintiff uncovered that the invoices submitted by the Contractors were fraudulent. (*Id.*) Rather, Plaintiff and Neil entered into a Settlement and Forbearance Agreement (the "Settlement Agreement") wherein Neil would pay back the Overpayment, with interest, on a fixed schedule through a promissory note. (*Id.*; *see also* Settlement Agreement, ECF No. 1-4.) After Neil failed to timely make payments on the note, Plaintiff brought the instant lawsuit seeking compensatory, punitive, and treble damages, as well as a number of equitable remedies against Neil, BPN, and Hockaday. (*See* Compl. at 16.)

After Defendants failed to respond to the Complaint, the Court entered a default judgment wherein it granted Plaintiff full compensatory relief, but denied Plaintiff's requests for punitive damages, treble damages, and various equitable remedies. (ECF No. 24.) Plaintiff then moved to alter or amend that Default Judgment, requesting that the Court grant punitive damages and equitable relief, or that the Court permit Plaintiff to pursue its claims on the merits, either in this Court or elsewhere.[1] (*See* Mot. Amend, ECF No. 31.) Defendants, who had entered an appearance

---

[1] Plaintiff does not seek reconsideration of this Court's decision to deny punitive or treble damages under the Tennessee Consumer Protection Act. (*See* Mot. Amend Mem. Supp. at 7 n. 3, ECF No. 31-1; *see also* ECF No. 23 at 8–9.)

2

following Plaintiff's Motion for Attorney's Fees (ECF Nos. 27, 30), oppose amendment of the Default Judgment. (*See* Opp'n Mot. Amend, ECF No. 32.)

## *II.     Legal Standard*

"Federal Rule of Civil Procedure 59(e) permits the district court to reconsider a decision in certain circumstances." *Hughley v. Matthew Carpenter, P.A.*, Civ. No. JKB-19-1950, 2020 WL 6703717, at *1 (D. Md. Nov. 13, 2020) (quoting *Ross v. Early*, 899 F. Supp. 2d 415, 420 (D. Md. 2012)). In the Fourth Circuit, "Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotation marks omitted). "Clear error or manifest injustice occurs where a court has patently misunderstood a party or has made a decision outside the adversarial issues present to the Court by the parties, or has made an error not of reasoning but of apprehension." *Wagner v. Warden*, Civ No. ELH-14-791, 2016 WL 1169937, at *3 (D. Md. Mar. 24, 2016) (internal citations and quotation marks omitted).

Although Rule 59(e) "permits a district court to correct its own errors," it "may not be used [] to raise arguments which could have been raised prior to the issuance of the judgment, nor may [it] be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). The court should also keep in mind that "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.*

3

### *III.    Analysis*

While Plaintiff's Motion to Alter or Amend requests significant modifications to the default judgment, it breaks down into two key inquiries. First, whether the Court correctly rejected Plaintiff's various claims for equitable relief where the core predicates for those claims were based solely on information and belief. Second, whether the Court correctly declined to grant punitive damages where Plaintiff's Motion for Default Judgment only requested punitive damages pursuant to the Tennessee Consumer Protection Act (the "TCPA"). The Court concludes that it correctly denied Plaintiff's speculative claims for equitable relief, but that Plaintiff adequately plead and may pursue punitive damages on its claim of fraudulent misrepresentation.

### *A. Equitable Remedies*

In its Complaint, Plaintiff requested three forms of equitable relief related to the Baltimore Property: (1) that this Court enter judgment against Hockaday for $425,000, representing her interest in the Baltimore Property;[2] (2) that the Court impose a constructive trust, in favor of Plaintiff and up to the amount of the Overpayment, in the Baltimore Property; and (3) that the Court permit Plaintiff to levy upon Hockaday's interest in the Baltimore Property as if Neil's conveyance had not been made. (Compl. at 16.) The Court declined to take these remedial steps

---

[2] Plaintiff's compensatory damages claim against Hockaday is based on unjust enrichment, which under Maryland law often entitles a plaintiff to legal relief despite the equitable nature of the claim. *See AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Rests., Inc.*, 219 A.3d 99, 103–04 (Md. Ct. Spec. App. 2019). However, the only allegation against Hockaday made in the Complaint is that she received an entireties interest in the Baltimore Property without the payment of consideration, making a money damages remedy an improper form of restitution. *Mogavero v. Silverstein*, 790 A.2d 43, 53 (Md. Ct. Spec. App. 2002) (emphasis added) (citation omitted) ("A person who receives a benefit by reason of an infringement of another person's interest . . . owes restitution to him *in the manner* and amount necessary to prevent unjust enrichment."). Given that Hockaday only received an interest in the Baltimore Property, the only logical remedy against Hockaday would be one for a constructive trust given the "purpose of [a constructive trust] is to prevent unjust enrichment of the holder of [ ] property." *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md. 1980). That remedy remains equitable under Maryland law. *See Alt. Unlimited, Inc. v. New Balt. Bd. of Sch. Comm'rs*, 843 A.2d 252, 278 (Md. Ct. Spec. App. 2004) (some emphasis omitted) (quoting Dan B. Dobbs, *Law of Remedies* (2d ed. 1993)) ("The term equitable, when applied to a remedy, usually has a precise meaning. It means a remedy based on a personal order, commanding specified conduct of the defendant, such as an injunction, an order for specific performance, or a *constructive trust or similar remedy* coupled with an *in personam* order.").

at the default judgment stage, and Plaintiff now avers that was error. It urges the Court to grant all three remedies in the conjunctive and in addition to the grant of compensatory damages.

### *1. Duplicative Relief*

Taken at face value, Plaintiff's motions seek *full* compensatory damages against the Contractors, an *additional* $425,000 from Hockaday, and a "constructive trust on the Baltimore Property . . . up to the amount of the Overpayment" *independent* of compensatory relief. (*See* ECF No. 22 at 2 (emphasis added) (requesting, *inter alia*, "judgment against the Contractors, jointly and severally, for compensatory damages in the amount of the Debt,"[3] "judgment against Ms. Hockady [sic] in the amount of $425,000 for compensatory damages[,]" "imposi[tion of] a constructive trust on the Baltimore Property in favor of Clayton up to the amount of the Overpayment[,]" "*and* [g]ranting such further and related relief as is just and proper.").) Such a windfall judgment would depart from the "fundamental purpose of equitable jurisdiction," which is "to grant relief when, *and only when*, the law courts could not, or would not, render a complete and adequate remedy for the wrong done." *Manning v. Potomac Elec. Power Co.*, 187 A.2d 468, 472 (Md. 1963) (emphasis added). To the extent Plaintiff wishes to use equity as a vehicle to seek multiplicative damages, this request must be flatly rejected. *See J. Aron and Co., Inc. v. Serv. Transp. Co.*, 515 F. Supp. 428, 443 n. 19 (D. Md. 1981) (citation omitted) ("[A] plaintiff could pursue both a damage remedy and a remedy in quantum meruit or unjust enrichment. . . . Of course, in the example[] just given the plaintiff could not prevail in both actions because of the prohibition against double recovery."); *see also Teel v. Rogers*, Civ. No. LMB/JFA-10-0303, 2010 WL 2679755, at *4 (E.D. Va. June 4, 2010) (finding that plaintiff on default judgment was "entitled to

---

[3] Plaintiff's Motions use the term Debt to refer to the amount owed by Neil after the Overpayment was structured into a periodic payment, with interest, by the Settlement Agreement.

5

only one recovery for the amount sought" by breach of contract and unjust enrichment claims), *report and recommendation adopted by Teel v. Rogers*, 2010 WL 2679756 (E.D. Va. July 2, 2010).

Plaintiff's briefing, however, appears to inartfully suggest an alternative rationale for its request of broad equitable relief. Plaintiff's Complaint alleges, on information and belief, that the Overpayment was used to purchase the Baltimore Property. (Compl. ¶ 27.) It also alleges, again on information and belief, that the purchase of this property rendered Neil insolvent, and was done for the purpose of impairing Plaintiff's ability to recover the Overpayment. (*Id.* ¶¶ 87, 93.) Thus, the thrust of Plaintiff's motions appear to be that, while a money judgment may be sufficient at law, it is insufficient in fact because Defendants are judgment-proof absent a judgment that provides Plaintiff recovery against the Baltimore Property. (Mot. Amend Mem. Supp. at 3 (arguing that "debtors need only use fraudulently obtained funds to purchase a property as tenants by the entirety . . . to place such ill-gotten gains forever beyond the reach of creditors").) Accordingly, Plaintiff asks this Court to enter multiplicative judgments not to provide multiplicative relief, but rather to provide multiple avenues through which Plaintiff may piece together complete relief. The windfall comes out in the wash.

This theory fails for two reasons. First, although Plaintiff argues (though only on information and belief) that such concerns are overstated, its proposed judgment still facially entitles it to multiplicative relief. For example, Hockaday's alleged gain is triple counted, with Plaintiff being awarded (1) Hockaday's "share" of the Overpayment in damages from the Contractors; (2) damages from Hockaday equal to the original value of her entireties interest in the Baltimore Property; and (3) a constructive trust on her actual entireties interest in the Baltimore Property. Second, even if Plaintiff could elect equitable remedies *in lieu of* compensatory damages (damages it has never suggested it is willing to relinquish), it has failed to show that such remedies

6

would be appropriate in this case. As the Court explained, Plaintiff was unable "to crystallize the connection between the Overpayment to [the Contractors] and the funds used to purchase the Baltimore Property," which prevented the Court from concluding that equitable remedies were appropriate in this case. (ECF No. 23 at 11.) Plaintiff urges the Court to reconsider this conclusion and make this connection based on allegations made solely on information and belief. (Mot. Amend Mem. Supp. at 9–11.) Plaintiff's arguments provide no grounds for reconsideration.

### 2. *Sufficiency of Pleading Equitable Remedies*

As noted above, "equity does not grant relief where there is a complete and adequate remedy at law." *Karpoff v. Haddad*, Civ. No. DKC-07-0014, 2008 WL 11509857, at *2 (D. Md. Aug. 4, 2008) (quoting *Manning*, 187 A.2d at 47). As a preliminary matter, it appears that legal relief is in fact adequate, as Defendants have represented through counsel that they are "actively engaged in discussions regarding Mr. Neil and BPN paying Plaintiff the amount awarded by this Court." (Opp'n Mot. Amend at 1 n. 1.) Further, even at the default judgment stage, Plaintiff's allegations made on information and belief are insufficient to show the inadequacy of a straightforward money judgment in providing complete compensatory relief.

This is because while "on default, the well-plead allegations in a complaint as to liability are taken as true, [ ] the allegations as to damages are not." *Trustees of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, Civ. No. DKC-08-2805, at *1 (D. Md. Sept. 14, 2009). Although most cases speak of damages, this distinction also includes allegations necessary to establish the propriety of equitable relief. *U.S. ex rel. Siemens Indus., Inc. v. Hanover Ins. Co.*, Civ. No. DEM-15-0018, 2015 WL 13734073, at *2 (E.D. Va. Nov. 18, 2015) (emphasis added) ("[W]here a court finds that entry of default judgment is appropriate as to liability, it must independently calculate the appropriate amount of damages, *or other remedy*, based on either an

evidentiary hearing or affidavits and documents attached to the plaintiff's motion."). Thus, the default judgment posture "in no way obviates the need for determinations of the amount *and character* of damages" that may be appropriately awarded against a defendant who is in default. *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (emphasis added) (quoting *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 (S.D. Ala. 2007)). Applying those principles to this case, there is no doubt that Plaintiff's allegations establish the Contractors' liability in the amount of the Overpayment. This does not, however, permit Plaintiff to liquidate that liability in any form it desires without first establishing the propriety of its proposed remedies. *See Flanagan v. N. Star Concrete Const., Inc.*, Civ. No. JS-13-2300, 2014 WL 4954615, at *6–7 (E.D.N.Y. Oct. 2, 2014) (explaining that facts plead on information and belief are "sufficient to hold [a] defendant individually liable on default judgment" but noting that "well-pled allegations of liability [are] not considered an admission of damages"). Here, Plaintiff fails to establish that recovery against the Baltimore Property through an equitable remedy was necessary to grant full relief.

### 3. *Plaintiff's Concerns About Adequacy of Process*

Plaintiff objects that the inability to rely on allegations made on information and belief to support equitable relief places it in a Catch-22 because of the limited discovery available where a defendant fails entirely to respond to a complaint. (*See* Mot. Amend Mem. Supp. at 10–11.) The Court believes these concerns are overstated for two reasons. First, the procedural bind Plaintiff presents is not nearly as vexing as it contends. Plaintiff places great weight on the fact that Federal Rule of Civil Procedure 26(d)(1) states that a party "**may not seek discovery from any source** before the parties have conferred as required by Rule 26(f). . . ." (Reply at 4 (emphasis in original).) Plaintiff's ellipsis, however, obscures the fact that this limitation is not absolute and

8

may be lifted "by court order." Fed. R. Civ. P. 26(d)(1). While courts generally limit such orders to discovery related to the appropriate amount of damages, which are often the only disputed issue at the default judgment stage, Plaintiff provides no basis for believing that other discovery is categorically foreclosed. *See Alstom Power, Inc. v. Graham*, Civ. No. MHL-15-0174, 2016 WL 354754, at *3 (E.D. Va. Jan. 27, 2016) (internal quotation marks and citation omitted) ("[District courts have] broad discretion to supervise discovery. This latitude extends to allowing discovery in the absence of a Rule 26(f) conference . . . [and] discovery following entry of default but prior to entry of a default judgment.").

Even were formal discovery to be foreclosed for some as yet unidentified reason, this Court would retain broad authority under Federal Rule of Civil Procedure 55(b)(2) to "conduct hearings or make referrals" in order to " determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2)(B)–(C). Plaintiff again provides no rationale for why this authority would be circumscribed so as to prevent the Court from confirming facts necessary to Plaintiff's remedial requests. The simple fact is that Plaintiff did not pursue either of these avenues prior to moving for a default judgment. (*See* ECF Nos. 19–21 (notices of default as to each Defendant), 22 (Motion for Default Judgment).) Plaintiff's decision to rush to the money judgment to which it was plainly entitled and decline avenues to develop the factual nuance necessary to justify equitable relief is not grounds for reconsideration.

Second, Plaintiff offers no reason that these, or similar, remedies would not be available to it when it seeks to enforce its money judgment. The crux of all of Plaintiff's requested remedies is to permit Plaintiff to recover against the Baltimore Property, which Plaintiff appears to suggest is the only way it will recover a meaningful portion of the Overpayment. However, it offers no reason why these remedies need be made available *ex ante*, rather than during the process of

9

satisfying the money judgment. *See* 28 U.S.C. § 3201(a) ("A judgment in a civil action shall create a lien on all real property of a judgment debtor on filing a certified copy of the abstract of the judgment.").

Admittedly, Plaintiff identifies a potentially troubling barrier to enforcement of its money judgment against the Baltimore Property. As the Court previously explained, Maryland law holds that "a creditor of either a husband or wife cannot attach the debtor's interest in entireties property." *Spitz v. Williams*, 519 A.2d 775, 776 (Md. Ct. Spec. App. 1987). A corollary to this rule is that "a conveyance of that property, which was already beyond the creditor's reach, would not be fraudulent as to the creditor and would not be set aside in an action under the Maryland Uniform Fraudulent Conveyance Act [(the "MUFCA")]." *Id.* Plaintiff points out that the manner in which the Court applied these rules to this case may create a situation wherein the Baltimore Property is, as a practical matter, immune to post-judgment collection efforts.

Plaintiff's concerns are valid, and the Court acknowledges that it likely over-read the applicability of *Spitz*, which prevents creditors from setting aside putatively fraudulent transfers *of* entireties properties, and not putatively fraudulent transfers *creating* entireties properties. *See Watterson v. Edgerly*, 388 A.2d 934, 938 (Md. Ct. Spec. App. 1978) ("[U]nder our holdings a creditor of one spouse may not attack as a fraudulent conveyance the transfer of land owned by a husband and wife as tenants by the entireties."). Despite this, the Court need not definitively resolve whether the latter type of transfer may be set aside under the MUFCA, because Plaintiff has still failed to show that such a remedy would be appropriate at this time.

Similar to several of Plaintiff's other claims, an action to void or disregard a fraudulent transfer under the MUFCA seeks an equitable remedy. This is confirmed by the fact that, "so long as the property remains in the possession of the fraudulent transferee . . . a judgment in personam

10

[for money damages] will not be entered" on an MUFCA claim. *Damazo v. Wahby*, 305 A.2d 138, 142 (Md. 1973). Only if the trustee disposes of the property will a damages action lie, and only then because "*equity* will not allow itself to be frustrated but will adapt its relief to the exigencies of the case and will enter a money judgment if this will achieve an equitable result." *Id.* (emphasis added). Plaintiff is correct that the merger of law and equity courts no longer requires a Plaintiff to "exhaust his remedy at law, by a fruitless execution on his judgment, before asking the aid of a Court of Equity to discover and reach the equitable assets of his debtor." (Reply at 10–11.) But, that merger does not change the fact that equitable remedies remain circumscribed by "[t]he doctrine [which] is well settled in [Maryland] that where a party has a certain, complete, and adequate remedy at law, he cannot sue in equity." *O'Brien & Gere Engs., Inc. v. City of Salisbury*, 135 A.3d 473, 481 (Md. 2016). For the reasons enumerated above with respect to Plaintiff's other equitable remedies, it has not yet shown that resort to the equitable remedies allowed by the MUFCA are appropriate in this case given that Plaintiff's alleged harm can be remedied by a money judgment. Should that change on further factual development, Plaintiff remains positioned, as a judgment creditor, to petition a court to set aside the transfer of the Baltimore Property to Hockaday as fraudulent.

In sum, nobody contests that Plaintiff was defrauded by the Contractors and is entitled to compensatory relief in the amount necessary to make it whole—the Court awarded exactly this judgment in compensatory damages. (*See* Def. Judgment at 1 (awarding Judgment "for compensatory damages, plus accruing interest under the Promissory Note and [Plaintiff's] future costs of collection").) Plaintiff seeks, in part, to recover these damages by enforcing its judgment against the Baltimore Property through several equitable avenues. However, Plaintiff's undeveloped allegations as to the propriety of equitable relief remain insufficient, even in the

default judgment posture. Although the Court acknowledges that attempts by Plaintiff to recover the Overpayment have previously fallen through, those attempts did not have the backing of a judicial judgment. Here, it appears that a money judgment will indeed be sufficient to provide Plaintiff with compensatory relief. (*See* Defs. Opp'n at 3 n. 1.) If not, there remain enforcement remedies available to facilitate adequate relief. The Court therefore denies alteration or amendment of the judgment with respect to Plaintiff's various claims for equitable remedies.

### *B. Punitive Damages*

The Court will, however, reconsider its previous denial of Plaintiff's request for punitive damages. (*See* Def. J. Mem. at 7 n. 3.) In its Motion for Default Judgment, Plaintiff included an ambiguous request for exemplary damages, asking this Court to "enter[] judgment against the Contractors, jointly and severally, for punitive or treble damages in the amount of $3,369,231.21, based on the Contractors' willful and malicious conduct and pursuant to Tenn. Code Ann. § 47-18-109(a)(3) and (4)." (Mot. Def. J. at 2.) The Court, and on reconsideration Defendants, read this request as asking solely for exemplary damages based on Plaintiff's TCPA claim. Having found that Plaintiff failed to adequately state a TCPA claim, the Court declined to enter judgment for exemplary damages. (*See* Def. J. Mem. at 7–9.) Plaintiff now seeks reconsideration on the grounds that its request for punitive damages was grounded not in the TCPA, but rather in its claim for fraudulent misrepresentation. (Mot. Reconsider. at 22.)

### *1. Availability of Punitive Damages*[4]

While the Court continues to find that the most natural reading of the Motion for Default Judgment limits the request for any type of exemplary damages to Plaintiff's TCPA claim, that

---

[4] Defendants also assert that Plaintiff's claim of punitive damages is barred by provisions in the Subcontract Agreement that state "in no event shall subcontractor be liable for any consequential, special, punitive, incidental, or similar damages." (Opp'n Mot. Amend at 12 (capitalization and emphasis omitted); *see also* ECF No. 1-4 at 29–

12

language could be generously construed as a broader request for punitive damages with respect to all of Plaintiff's claims grounded in "Contractors' willful and malicious conduct." (Mot. Def. J. at 2; *see also* Compl. ¶ 62 (requesting punitive damages for Plaintiff's fraudulent misrepresentation claim "as a result of the Contractors' intentional misrepresentations and actual malice").) The Court will amend its judgment to permit Plaintiff to seek punitive damages for its claim of fraudulent misrepresentation for two reasons.

First, at the default judgment stage, the scope of Plaintiff's available remedies are controlled by the Complaint, not the Motion for Default Judgment. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also* Mary Kay Kane, *et al.*, *Federal Practice and Procedure* (herein "Wright & Miller") § 2663 ("The first sentence of Rule 54(c) states that a judgment by default is limited to the relief demanded in the complaint."). The theory of this limitation "is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." Wright & Miller § 2663 (collecting cases). Here, Plaintiff's Complaint is far clearer than its Motion for Default Judgment on the fact that it is seeking (1) punitive damages for its claim of fraudulent misrepresentation and (2) treble damages under the TCPA. (*See* Compl. ¶¶ 54–73.) Accordingly, there is no risk that permitting punitive damages creates a situation where it "would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then . . . allow the court to give a different type of relief or a larger damage award." Wright & Miller § 2663.

---

30.) However, the provisions Defendants rely on appear in an Indemnity provision and only apply where the subcontractor (Contractors) are defending the project manager (Plaintiff) against various types of claims arising out of the performance of the contract. (ECF No. 1-4 at 29.) That contractual bar plainly has no application to this case where the interests of the contracting parties are not aligned and no indemnity is sought.

Second, while granting punitive damages will not create fundamental unfairness, denying them entirely may. As Plaintiff points out, the Contractors "admitted knowledge and intent to deceive" which, under Maryland law, justifies an award of punitive damages to "deter the wrongdoer and others from engaging in the same misconduct." (*See* Mot. Amend at 22 (quoting *Capital Fin., LLC v. Rosenberg*, 364 F. Supp. 3d 529, 551 (D. Md. 2019).) On reconsideration, the Court is moved by the fact that returning the parties to the monetary status quo is an insufficient deterrent where the Contractors have conceded that their conduct was "willful[], knowing[], and fraudulent[]." (*See* Settlement Agreement ¶ I.) This risk of injustice is particularly acute given that Contractors had fair notice of the potential for punitive damages from the Complaint and still chose not to defend the merits of Plaintiff's claims. Given this, the Court will amend its judgment to permit Plaintiff to seek punitive damages, as denying such damages at this stage would constitute a manifest injustice. *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010) (permitting amendment of judgment where "there has been a clear error of law or a manifest injustice"); *see also Wagner*, 2016 WL 1169937, at *3 ("[M]anifest injustice occurs where a court has patently misunderstood a party . . . or has made an error not of reasoning but of apprehension.").

### *2. Amount of Punitive Damages*

That said, Plaintiff has given the Court little on which to grant more than a nominal amount of punitive damages, much less the over $3 million in punitive damages Plaintiff requested in its Motion for Default Judgment. (*See* Mot. Def. J. at 2.) While "there is no presumptively reasonable proportion of punitive damages to compensatory damages," other courts have been guided by the fact that "numerous statutes in Maryland authorizing punitive damages limit any award to a maximum of three times of the actual damages awarded." *Legacy Inv. and Mgmt., LLC*

14

*v. Susquehanna Bank*, Civ. No. WDQ/TJS-12-2877, 2014 WL 5325757, at *10 (D. Md. Oct. 17, 2014) (awarding punitive damages equal to double compensatory damages but noting that the compensatory damages represented "less than the total amount of funds [defendant] misappropriated"). The allegations in Plaintiff's Complaint place this case far closer to the floor than the ceiling with respect to punitive damages, if any such damages are warranted at all. *See Bowden v. Caldor, Inc.*, 710 A.2d 267, 278 (Md. 1998) (internal quotation marks and citation omitted) ("[A] plaintiff has no right or entitlement to punitive damages under Maryland law. The trier of fact has the discretion to deny punitive damages even where the record otherwise would support their award.").[5]

Plaintiff rests its request for punitive damages solely on the fact that the Contractors have admitted to willful fraud. However, "simply because the defendant has engaged in some 'heinous' or 'egregiously bad conduct' does not necessarily justify a large award of punitive damages. Under Maryland law, engagement in such conduct is a prerequisite for *any* award of punitive damages." *Id.* (emphasis in original) (citation omitted). Instead, in affixing the amount of punitive damages, "it is the degree of heinousness which is important." *Id.* The Contractors' conduct in defrauding a "competent, sophisticated counterparty," though troubling, does not strike the Court as particularly heinous, much less sufficiently heinous to permit maximal punitive damages. (*See* Def. J. Mem. at 9); *see also* "heinous," *Merriam-Webster Online Dictionary* (2021), https://www.merriam-webster.com/dictionary/heinous ("hatefully or shockingly evil").

Further militating against a significant punitive damages award is Plaintiff's allegation that Defendants were functionally insolvent (beyond the Overpayment) at the time they committed the fraud and Plaintiff's concerns about Defendants' ability to pay even a compensatory monetary

---

[5] Given the Court's decision to deny punitive damages at the default judgment stage on procedural grounds, the Court does not yet decide whether a discretionary denial of punitive damages would be appropriate in this case.

15

award. (*See* Compl. ¶ 86.) The Maryland Court of Appeals has cautioned that "punitive damages, in order to be fair and effective, must relate to the degree of culpability exhibited by a particular defendant and that party's ability to pay." *Embrey v. Holly*, 442 A.2d 966, 973 (Md. 1982). These two principles counsel against a maximal award of punitive damages in this case.

However, while there is little to commend Plaintiff's requested sum, there are also few grounds on which this Court can affix an appropriate sum of punitive damages. Further, Defendants entered this case to argue for the Court's technical denial of punitive damages and have not advanced a view on the substantive propriety of such damages in this case. Given this, there is significant uncertainty regarding the appropriate award of punitive damages. When faced with such situations, courts routinely bifurcate the default judgment process, granting default judgment as to liability and allowing a period of limited discovery with respect to any unliquidated damages. *See Alstom Power*, 2016 WL 354754, at *3 (collecting cases). Despite the unusual procedural posture of this case, the Court sees no reason to depart from that familiar approach for ascertaining uncertain damages at the default judgment stage.

Accordingly, the Court's Order will permit a short period of discovery limited *solely* to elucidating the objective factors bearing on the appropriate amount of punitive damages. Following this discovery period, the parties shall submit briefing regarding the appropriate amount of punitive damages to be awarded on Plaintiff's claim for fraudulent misrepresentation. Further, given that the ability to engage in this limited discovery may close the gap between the parties' views as to the appropriate punitive damages award, the Court will set this case for a settlement conference following the conclusion of discovery.

*C. Attorney's Fees*

As the Court has amended its judgment and set this case for further proceedings, it declines to address Plaintiff's Motion for Attorney's Fees at this time to avoid piecemeal adjudication as to the question of appropriate fees. Plaintiff's motion will be denied without prejudice and the parties' positions may be re-urged, in part or in full, once the additional proceedings outlined in this opinion have concluded and this Court has reentered final judgment.

*IV. Conclusion*

For the foregoing reasons, Plaintiff's Motion to Alter or Amend (ECF No. 31) is GRANTED in part and denied in part and Plaintiff's Motion for Attorney's Fees (ECF No. 27) is DENIED without prejudice.

DATED this 21 day of September, 2021.

BY THE COURT:

James K. Bredar
Chief Judge