IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CMH MANUFACTURING,** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL NO. JKB-21-0674** |
| **SERVAIS EVRARD NEIL,** *et al.*, | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Pending before the Court is Plaintiff CMH Manufacturing's ("CMH") Renewed Motion for Attorneys' Fees and Expenses. (ECF No. 156.) CMH obtained a default judgment against Defendants Servais Neil and Neil's company BPN Partners, Ltd. ("BPN") (collectively, the "Contractors") for $1,166,927.72, the balance plus interest owed by the Contractors to CMH under a preexisting Settlement Agreement between the parties. (ECF No. 24; *see* Settlement Agreement, Ex. D to Compl., ECF No. 1-4.) The Court then allowed limited discovery and additional briefing regarding punitive damages in this case (ECF No. 41 at 1) and subsequently awarded CMH $350,078.32 in punitive damages. (ECF No. 154.) In the instant Motion, CMH seeks attorneys' fees totaling $193,487.45 for both the default judgment and punitive damages phases of litigation. (Mem. Supp. Renewed Mot. Att'y Fees, ECF No. 159, at 12.) The Motion is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, the Court will grant in part the Motion and award CMH reasonable attorneys' fees and expenses in the amount of $84,338.51.

1

## I. Background

In 2019, CMH contracted BPN to provide general contracting and construction services. (Compl., ECF No. 1, at 3.) As discussed more thoroughly in the Court's prior memoranda in this matter, this case concerns a scheme of fraudulent invoicing that the Contractors perpetrated against CMH. (*See* ECF Nos. 23 at 1–4, 41 at 1–3, 154 at 1–7.) After CMH discovered the fraud, the parties entered into a Settlement Agreement, which detailed the Contractors' wrongful conduct and set a schedule pursuant to which the Contractors agreed to repay the amount that they had fraudulently obtained from CMH (the "Overpayment"). (Settlement Agreement.)

The Settlement Agreement afforded CMH the right to act to "enforce any *contractual, legal, or equitable rights and remedies* that CMH may have" against the Contractors if they defaulted on their repayments. (*Id.* ¶ 10(b) (emphasis added).) The Settlement Agreement further specified that "[i]f CMH is required to obtain the assistance of counsel to enforce its rights or the Contractors' obligations under or related to this Agreement . . . the Contractors agree to be jointly and severally liable to CMH for its costs and expenses, including reasonable attorneys' fees." (*Id.* ¶ 24(d).)

This case arises out of the Contractors' failure to fulfill their obligations under the Settlement Agreement, including repaying the Overpayment. Litigation in this matter proceeded in two distinct phases: the default judgment phase and the punitive damages phase.

### A. Default Judgment Phase

Initially, CMH brought this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) after the Contractors defaulted on their repayment obligations under the Settlement Agreement. (Compl.) CMH sought to recover the Overpayment plus interest, punitive

2

damages, treble damages under the Tennessee Consumer Protection Act,[1] and various equitable remedies. (*Id.* at 16.)

The Contractors did not defend against CMH's complaint, and CMH moved for a default judgment. (ECF No. 22.) The Court granted default judgment with respect to the Overpayment plus interest under the terms of the Settlement Agreement, but it declined to award other relief, finding that CMH had not carried its evidentiary burdens. (*See* ECF No. 23.) CMH then filed a Motion for Attorneys' Fees (ECF No. 27) and a Motion to Alter or Amend the default judgment, in which CMH argued that the Court should reconsider CMH's requests for punitive damages and equitable relief. (ECF No. 31.) The Contractors opposed these Motions. (ECF Nos. 32, 37.)

On reconsideration of the default judgment, the Court again denied equitable relief, but it concluded that an award of punitive damages for fraudulent misrepresentation might be appropriate given that, in the Settlement Agreement, the Contractors had stipulated to having had "knowledge and intent to deceive" CMH. (ECF No. 41 at 14.) Accordingly, the Court ordered "a short period of discovery limited *solely* to elucidating the objective factors bearing on the appropriate amount of punitive damages," namely the Contractors' "'degree of culpability . . . [and] ability to pay.'" (*Id.* at 16 (emphasis in original) (quoting *Embrey v. Holly*, 442 A.2d 966, 973 (Md. 1982)).)

At the same time, the Court denied without prejudice CMH's Motion for Attorneys' Fees, instructing that "the parties' positions [concerning fees] may be re-urged . . . [once] this Court has reentered final judgment." (*Id.* at 17.)

---

[1] The Settlement Agreement was executed in Tennessee. (*See* Settlement Agreement.)

3

### B. *Punitive Damages Phase*

Discovery on the issue of punitive damages was contentious, primarily due to the scope of CMH's inquiry into the Contractors' business affairs. The Contractors moved for a protective order and to quash third-party subpoenas after CMH "serve[d] voluminous document requests and interrogatories [on the Contractors, Neil's wife Layne Hockaday,[2] and] four additional third parties." (Mem. Supp. Mot. Protective Order, ECF No. 52-1, at 1.) Those third parties were: (1) New Line Title and Escrow Company, from whom CMH sought records related to Neil's alleged purchase of a property in Baltimore with Overpayment funds; (2) Amalgamated Bank, from whom CMH sought evidence of the Contractors' accounts and liabilities; (3) Marathon Oil ("Marathon"), from whom CMH sought records of business dealings with the Contractors; and (4) NMSD Oilfield Services ("NMSD"), a limited liability company that Neil created after BPN became bound by the Settlement Agreement, from whom CMH sought business records. (*See* Exs. E–G to Defs.' Mot. Protective Order, ECF Nos. 52-6–52-9.) Magistrate Judge Coulson[3] struck "many" of CMH's interrogatories and requests for production, finding that they went "beyond the limited scope set by [this Court]," but allowed the third-party subpoenas because the Defendants lacked standing to challenge them and because "there [was] no showing that the information sought [was] beyond the scope of determining Defendants' ability to pay or otherwise propounded for an improper purpose." (ECF No. 63.)

In its Motion for Punitive Damages, CMH asserted that "[t]hrough discovery" it had "uncovered subsequent intentional torts against [CMH] *and other third parties*" that warranted an

---

[2] Hockaday is a named Defendant in this action solely because CMH initially sought compensatory damages for and a levy on her interest, as tenants by the entirety with Neil, in a Baltimore property allegedly purchased with Overpayment funds. (*See* Compl. at 16.) At no point in this litigation has the Court granted CMH relief against Hockaday, and she is not a party to the Settlement Agreement between CMH and the Contractors. (*See generally* ECF Nos. 24, 155; Settlement Agreement.) Because she is neither liable to CMH nor bound by the Settlement Agreement, Hockaday is not liable for CMH's attorneys' fees or expenses.

[3] This matter was referred to Magistrate Judge Coulson for discovery and related scheduling matters. (ECF No. 53.)

4

award of punitive damages equal to three times the sum of the Overpayment, plus attorneys' fees. (ECF No. 76 at 2 (emphasis added), 21.) To support its argument that the Contractors' conduct was deserving of such drastic sanctions, CMH relied heavily on allegations (1) that Neil had subsequently defrauded two non-parties, Marathon and factoring company FundThrough, and (2) that Neil had failed to disclose an unrelated lawsuit against him for fraud, which was later dismissed. (*Id.* at 3–7.) CMH argued that Neil's "repeated, intentional fraud," his "similar misconduct injuring third parties," and his "[i]ntentionally defrauding creditors" supported a finding that his conduct was "particularly egregious." (*Id.* at 10–12.) In support of the Motion, CMH submitted hundreds of pages of exhibits obtained during discovery, including the Contractors' contracts with FundThrough and Marathon and a full transcript of CMH's deposition of a Marathon representative. (*See* Index Exs. to Mot. Punitive Damages, ECF No. 76-1.)

The Court awarded CMH modest punitive damages in the amount of 30% of the default judgment, or $350,078.32. (ECF No. 154 at 20.) In considering CMH's Motion, the Court found that "this case is, for the most part, routine rather than extreme." (*Id.* at 9.) It declined to weigh evidence of Neil's alleged misconduct against Marathon and FundThrough, noting that neither entity "appears to have made (much less proven) claims against Neil for fraud," and concluding that "the appropriate penalty" for such fraud would be "a punitive damage award in favor of FundThrough or Marathon, not an amplification of the award in favor of CMH." (*Id.* at 12 (citing *State Farm Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis[.]")).)

CMH subsequently filed the instant Renewed Motion for Attorneys' Fees. (ECF No. 156.) CMH seeks a total of $193,487.45 in attorneys' fees and expenses incurred throughout both phases

of litigation. (Mem. Supp. Renewed Mot. Att'y Fees at 5.) Relying on the *Barber* factors discussed below and the affidavit of attorney James P. Ulwick, who avers that the fees and costs are reasonable, (ECF No. 159-6), CMH argues that the Contractors are liable under the Settlement Agreement's fee-shifting provision for the full amount sought. (Mem. Supp. Renewed Mot. Att'y Fees at 11.) The Contractors oppose the Motion and argue that CMH is not entitled under the Settlement Agreement to fees related to punitive damages because it did not seek those damages "based on any alleged misrepresentations contained in the Settlement Agreement[.]" (Resp. Opp'n Renewed Mot. Att'y Fees, ECF No. 160, at 11.)[4] Further, the Contractors argue that the fees and costs sought for the default judgment phase are not reasonable because CMH's counsel "spent a number of hours on [the uncontested default judgment] more suited to a contested dispute." (*Id.* at 12.) The Contractors make no argument about the reasonableness of the fees and costs sought for the punitive damages phase of litigation. (*See generally id.*)

## II. Legal Standard

Sitting in diversity, a federal court applies the law of the forum state, which, in this case, is Maryland. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In applying the forum state's law, this Court is also bound to apply Maryland's rules for choice of law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013). Because Maryland follows the rule of *lex loci contractus*, "the substantive application of the law to [a] contract between the parties is subject to the enforcement of the jurisdiction where the contract was formed." *Brownlee v. Liberty Mut. Fire Ins. Co.*, 175 A.3d

---

[4] The Contractors argue in the alternative that CMH cannot recover attorneys' fees for the punitive damages litigation because CMH "did not seek attorneys' fees in Count IV of its Complaint." (Resp. Opp'n Renewed Mot. Att'y Fees at 5.) This argument has no merit, as CMH's Complaint included a request for reasonable attorneys' fees and expenses among its general prayers for relief. (Compl. at 16.) Further, the Court need not reach this argument because, as discussed below, the Contractors are obligated under the Settlement Agreement to reimburse CMH for its fees and expenses related to pursuing punitive damages.

697, 701 (Md. 2017). The parties agree that the law of Tennessee, where the Settlement Agreement was executed, governs its terms. (Settlement Agreement; Mem. Supp. Renewed Mot. Att'y Fees at 9; Resp. Opp'n Renewed Mot. Att'y Fees at 5.)

Under Tennessee law, a party may recover attorneys' fees in a civil action if "a contract specifically and expressly creates a right to recover" them "by incorporating the phrase 'including reasonable attorney fees' or some other similar, yet equally specific, contractual language." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 310 (Tenn. 2009). Where attorneys' fees are available, the Tennessee Supreme Court has stated that "[t]he trial court's determination of a reasonable attorney's fee is 'a subjective judgment based on evidence and the experience of the trier of facts[.]'" *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (quoting *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Tr. Co.*, 703 S.W.2d 133, 137 (Tenn. 1986)).

This Court's starting point for deciding an award of attorneys' fees is to "first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Courts are empowered to adjust the lodestar figure by applying the *Barber* factors, which include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243–44 (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may

be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010).

A court may enhance or reduce the fee if it believes a modification is warranted based on the specific circumstances of the case. *See, e.g., Zen42 LLC v. Wash. & Lee Univ.*, Civ. No. 17-00053, 2018 WL 4625627, at *3 (W.D. Va. Sept. 26, 2018) (reducing hours by 65 percent based on unreasonable overbilling in straightforward breach-of-contract case); *VFI Assocs., LLC v. Lobo Mach. Corp.*, Civ. No. 08-00014, 2012 WL 975705 at *7 (W.D. Va. Mar. 22, 2012) (reducing fee request by half in case where the fraud was straightforward and where there were no significant novel or complex legal issues, despite the fact that discovery in the case was difficult); *Spencer v. Central Servs., LLC*, Civ. No. CCB-10-3469, 2012 WL 142978, at *4 (D. Md. Jan. 13, 2012) (declining to enhance lodestar amount because "*Perdue* emphasized enhancements should be applied sparingly and in exceptional cases."). In particular, the court may award "some percentage of the [lodestar] amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (quotations omitted)).

### III. Analysis

For the reasons set forth below, the Court concludes that, while the parties' Settlement Agreement entitles CMH to reasonable attorneys' fees for both phases of this litigation, the specific circumstances of this case weigh against awarding the full amount that CMH requests. Accordingly, CMH's Renewed Motion for Attorneys' Fees will be granted in part and CMH will be awarded the reduced amount of $84,338.51.

### A. *Availability of Attorneys' Fees*

As a threshold matter, the Court finds that CMH is entitled to an award of reasonable attorneys' fees for both the default judgment and punitive damages phases of this litigation by the terms of the parties' Settlement Agreement.

The Contractors concede that fees are "potentially recoverable" under the Settlement Agreement for the default judgment phase of litigation in which CMH was awarded the Overpayment. (Resp. Opp'n Renewed Mot. Att'y Fees at 7.) They assert, however, that "the attorneys' fee provision[] of the [Settlement Agreement is] silent regarding any efforts to obtain *punitive* damages," and that the punitive damages phase of this litigation was unrelated to the Settlement Agreement because it was not "based on any alleged misrepresentations contained in the Settlement Agreement[.]" (*Id.* at 7 (emphasis in original), 11.)

These assertions are groundless according to the plain language of the Settlement Agreement. The fee-shifting provision of the Settlement Agreement provides that, "[i]f CMH is required to obtain the assistance of counsel to enforce its rights or the Contractors' obligations *under or related to this Agreement or the Note* . . . the Contractors agree to be jointly and severally liable to CMH for its costs and expenses, including reasonable attorneys' fees." (Settlement Agreement ¶ 24(d) (emphasis added).) The Settlement Agreement expressly permits CMH to seek "punitive or other additional damages" in the event the Contractors defaulted on their repayment obligations—which the Contractors implicitly concede that they did. (*Id.* ¶ 3; Resp. Opp'n Renewed Mot. Att'y Fees at 7 ("Defendants never opposed Plaintiff's right to the acknowledged debt under the Contractual Agreements[.]").) The fees and expenses incurred by CMH during the punitive damages phase of litigation thus fall squarely within the bounds of the Settlement Agreement's fee-shifting provision.

9

Moreover, the Contractors' assertion that the punitive damages litigation was "not based on any alleged misrepresentations contained in the Settlement Agreement" is false. The Court reopened the question of punitive damages for fraudulent misrepresentation *because* the Contractors stipulated in the Settlement Agreement "that their conduct [toward CMH] was 'willful[], knowing[], and fraudulent[].'" (ECF No. 41 at 14 (quoting Settlement Agreement ¶ 1).) The punitive damages awarded to CMH were thus based upon misrepresentations to which the Contractors admitted in the Settlement Agreement.

Accordingly, under the terms of the Settlement Agreement, the Contractors are jointly and severally liable to CMH for its reasonable attorneys' fees incurred during both phases of this litigation.

### B. *Amount of Reasonable Attorneys' Fees*

Having concluded that CMH's attorneys' fees are recoverable, the Court must now determine a reasonable award. For purposes of fee calculation, the Court will reference the itemized timesheets submitted in support of the instant Motion by CMH's primary counsel—Maynard, Cooper, and Gale, P.C. ("Maynard")—and local counsel—first Semmes Bowen and Semmes ("Semmes") and later Franklin and Prokopik ("Franklin"). (ECF Nos. 159-2, 159-4.)

In determining the reasonableness of the hourly rates charged by each attorney and paralegal, the Court is guided by the advisory range set forth in Appendix B to the Local Rules. Both Semmes's and Franklin's rates fall within that range. (ECF No. 159-1.) While Maynard's rates generally exceed it, the Court acknowledges that Maynard gave CMH a courtesy discount of approximately 10% for all services rendered, which brings Maynard's attorneys' individual fees either within or much closer to the Appendix B range. (ECF Nos. 159-3, 159-4.) The Court is therefore satisfied that the rates charged by CMH's counsel are reasonable.

Because this litigation has proceeded in two phases, each with distinct issues and circumstances, the Court will apply the lodestar and *Barber* framework to each phase separately and award CMH the sum of the two figures. All hours billed on or before July 1, 2021, the date on which default judgment was entered against the Contractors, will be counted toward the default judgment phase, as will all hours billed for the preparation of CMH's first Motion for Attorneys' Fees (ECF No. 27). All other hours billed after July 1, 2021 will be considered part of the punitive damages phase. According to this method, CMH requests approximately $42,123.66 in fees and costs for about 153 hours of legal work related to default judgment, and approximately $151,918.75 in fees and costs for about 420 hours of legal work related to punitive damages. The Court will use these amounts as starting points in determining lodestar figures.

### i. *Default Judgment Phase*

With respect to the first phase of litigation, the Court finds that $42,123.66 in fees and costs for more than 150 hours of legal work is beyond what was reasonably necessary to obtain an uncontested default judgment. Preparing and filing a motion for default judgment based primarily upon a prior agreement of precise financial liability is not, in the Court's view, the sort of complex litigation that requires such an extensive expenditure of time and labor. A review of recent fee awards in this District for similar work indicates that prevailing parties have received about half of the fees that CMH requests for about half of the number of hours of work. *See, e.g., Carranza v. Ramirez*, Civ. No. PWG-20-2687, 2022 WL 4080310, at *1, *6 (D. Md. Sept. 6, 2022) (awarding $20,785 in fees following uncontested default judgment where plaintiff requested $27,763 in fees for 72.4 hours of legal work); *Wei v. Xu*, Civ. No. ELH-21-0601, 2022 WL 1422926, at *14 (D. Md. May 4, 2022) (awarding $18,520 in fees for 72 hours of legal work following uncontested default judgment). Several *Barber* factors—including "(1) the time and labor expended, (2) the

novelty and difficulty of the question raised," and "(5) the customary fee for like work" as illustrated by the above cases—thus counsel in favor of awarding CMH approximately half of the fees it seeks related to default judgment. 577 F.2d at 226 n. 28.

However, CMH enjoyed a significant "degree of success" on the merits of its Motion for Default Judgment, a fact which under *Robinson* merits an upward adjustment of the lodestar figure. 560 F.3d at 244. Notwithstanding the failure of its requests for treble damages and injunctive relief, CMH obtained the full amount of the Contractors' outstanding liability under the Settlement Agreement, a total of $1,166,927.72 plus interest. (*See* ECF No. 23.) Accordingly, and considering that a request for $42,123.66 in fees is modest in comparison to the default judgment obtained, the Court finds it appropriate to award CMH 80% of the fees and costs requested for the default judgment phase of litigation, for a total of $33,698.93.

### ii. *Punitive Damages Phase*

With respect to the punitive damages phase of litigation, the Court is less persuaded that the requested fees and costs are reasonable given the overbreadth of CMH's discovery. When it allowed CMH to pursue punitive damages for fraudulent misrepresentation, the Court cautioned that it would permit only "a short period of discovery limited *solely* to the objective factors bearing on the appropriate amount of punitive damages." (ECF No. 41 at 16.) Just three months later, in December 2021, Magistrate Judge Coulson struck multiple of CMH's discovery requests that did not fall within "the limited scope set by [this Court]." (ECF No. 63.) Nonetheless, counsel's timesheets indicate that, in 2022, they billed for more than $87,000 in fees for written discovery, depositions, and motions practice. (ECF Nos. 159-2, 159-4.) A significant portion of this work was devoted to proving up claims of fraud allegedly perpetrated by Neil against non-parties to this action—claims which the Court found irrelevant to determining the appropriate amount of punitive

12

damages for the Contractors' misrepresentations to CMH. (*See* ECF No. 154 at 10.) For instance, Maynard billed for more than $10,000 in work related to the deposition of a Marathon representative, the primary object of which seems to have been to determine the extent of Neil's fraudulent conduct toward Marathon and FundThrough. (*See* ECF No. 159-4; *see generally* Dep. Brian Lipscomb, Ex. K to Pl.'s Mot. Punitive Damages, ECF No. 76-12.)

Applying the *Barber* factors here, the Court concludes that CMH's counsel expended a disproportionate amount of time and labor on discovery in comparison to the straightforward question of the Contractors' "'degree of culpability . . . [and] ability to pay'" punitive damages to CMH. (ECF No. 41 at 16 (emphasis in original) (quoting *Embrey*, 442 A.2d at 973).) Additionally, *Barber* factor (8), "the amount in controversy and the results obtained," weighs heavily against CMH. Ultimately, the Court deemed $350,078.32 to be an appropriate award of punitive damages—far less than the over $3 million that CMH sought, and barely twice what CMH now requests in the fees and costs expended to obtain it. CMH's relative lack of success on the merits in the punitive damages phase also warrants a downward departure from the lodestar figure under *Robinson*.

Considering the overbroad discovery conducted by CMH, the failure of much of that discovery to support CMH's ultimate award of punitive damages, and the outsized proportion of fees sought to punitive damages obtained, the Court in its discretion will award CMH one third of the fees and costs requested for this phase of litigation, for a total of $50,639.58.

The above analysis yields a combined award of $84,338.51 in reasonable attorneys' fees and costs for the litigation as a whole.

13

## IV. Conclusion

For the foregoing reasons, a separate Order shall issue GRANTING IN PART Plaintiff CMH Manufacturing's Renewed Motion for Attorneys' Fees and awarding Plaintiff a total of $84,338.51 in reasonable attorneys' fees, for which Defendants Servais Neil and BPN will be jointly and severally liable.

DATED this __14__ day of December, 2022.

BY THE COURT:

_____
James K. Bredar
Chief Judge